# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **CALFANZO A. WELCH,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL ACTION NO. 4:07-cv-1585-KOB** |
| ) | |
| **MICHAEL J. ASTRUE** ) | |
| **Commissioner of the Social** ) | |
| **Security Administration,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

### I. Introduction

On March 19, 2003, the claimant, Calfanzo A. Welch, protectively filed an application for Disability and Disibility Insurance Benefits (SSDI) under Title II of the Social Security Act; he alleged that he had been disabled since August 6, 2001, because of high blood pressure, migraine headaches, asthma, bilateral knee pain, and anxiety. The Social Security Administration initially denied the claimant's application, and the claimant requested a hearing before an Administrative Law Judge. The ALJ, the Honorable Jerome L. Munford, held a hearing on November 16, 2005, and denied the claim.  The claimant then applied to the Appeals Council for review.  The Appeals Council denied the claimant's request for review, and this denial constituted the final decision of the Commissioner of the SSA.  The claimant has exhausted his

administrative remedies, and this court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons stated below, the decision of the Commissioner will be AFFIRMED.

## II. Standard of Review

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if his factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). "No . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999. This court does not review the Commissioner's factual determinations *de novo*, but will affirm those factual determinations that are supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner]'s factual findings." *Walker*, 826 F.2d at 999. A reviewing court must not only look to those parts of the record that support the decision of the ALJ, but must also view the record in its entirety and take account of evidence that detracts from the evidence on which the ALJ relied. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

## III. Issues Presented

In this appeal, the claimant argues that the ALJ's decision is not supported by substantial evidence, because (1) the ALJ improperly discounted the claimant's subjective

complaints of pain, and (2) the ALJ failed to fully and fairly develop the record.

### IV. Legal Standards

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."

To make this determination, the Commissioner employs a five-step, sequential evaluation process:

> (1)  Is the person presently unemployed?
>
> (2)  Is the person's impairment severe?
>
> (3)  Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1?
>
> (4)   Is the person unable to perform his or her former occupation?
>
> (5)  Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); *see also* 20 C.F.R. §§ 404.1520, 416.920.

In evaluating subjective complaints of pain, the ALJ must consider:

> 1) Evidence of an underlying medical condition and either
>
> 2) Objective medical evidence that confirms the severity of the alleged pain arising from that condition, or
>
> 3) That the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged pain.

*Holt v. Sullivan*, 921 F.2d 1221 (11th Cir. 1991).

The ALJ has a duty to fully and fairly develop the record. *Welch v. Bowen*, 854 F.2d 436 (11th Cir. 1988). This duty exists regardless of whether the claimant is represented by counsel. *Brown v. Shalala,* 44 F.3d 931 (11th Cir. 1995). A full and fair record not only ensures that the ALJ has fulfilled his "duty . . . to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts," but it also enables the reviewing court "to determine whether the ultimate decision on the merits is rational and supported by substantial evidence." *Bowen*, 854 F.2d at 440.

### V. Facts

The claimant was forty-one years old at the time of the administrative hearing and has more than a high school education. (R. 18). His past work experience includes employment as a corrections officer, mobile home manufacturer floor department worker, pipe relief man, security guard, and fast food worker. (R. 18). According to the claimant, he became disabled on August 6, 2001, due to high blood pressure, migraine headaches, asthma, bilateral knee pain, and anxiety. (R. 18). The claimant testified that he has not worked since August 6, 2001, and has been attending college since 2002. (R. 23). The claimant also testified that he is not taking any medications at present. (R. 23).

The claimant went to the Walker Baptist Medical Center on February 28, 2000, for

shortness of breath and a headache. (R. 18). An attending physician treated the claimant and noted that he had a history of asthma, bilateral knee pain, anxiety attacks, migraine headaches, and hypertension. (R. 18). The attending physician diagnosed the claimant with occipital neuralgia and common migraine, and prescribed Midrin and a retrial of Verapamil. (R. 18). The claimant returned to the Walker Baptist Medical Center on March 6, 2000, for asthma-related symptoms. (R. 18). Dr. Jan Westerman treated the claimant, and diagnosed him with status asthmaticus. (R. 18). Dr. Westerman noted that the claimant had a very apathetic attitude and a poor understanding of his underlying asthma. (R. 18).

On June 19, 2000, the claimant again visited Dr. Westerman and reported increased asthma symptoms. (R. 18). The claimant stated that he was using his Albuterol nebulizer four to five times a day because he had been out of his medication, Singulair, for the past week. (R. 18). Dr. Westerman discussed at length the importance of medication compliance, but noted that the claimant seemed to have difficulty understanding. (R. 18). The claimant returned to Dr. Westerman on August 1, 2000, and again reported that he had been out of Singulair for one week. (R. 18). Dr. Westerman noted that the claimant had difficulty complying with his medication regiment, and referred him to the Veteran's Administration Hospital for help in obtaining his medication. (R. 18).

The claimant presented to the Veteran's Administration medical clinic on May 29, 2001, as a walk-in patient, with complaints of shortness of breath, headaches, and hypertension. (R. 18). Dr. Syed Hussain treated the claimant and prescribed him Midrin, Prednisone, a Solu-Medrol inhaler, a Flovent inhaler, an Albuterol inhaler, and an unspecified medication for

hypertension. (R. 19). Dr. Hussain advised the claimant to return for a follow-up appointment in three months, but the claimant did not return until December 13, 2001, for medication refills. (R. 19). On August 17, 2001, however, the claimant telephoned the Veterans Administration medical clinic and requested medical certification that he was physically able to perform the work required in a post office. (R. 25). In response to the claimant's request, Dr. Hussain stated that the claimant was capable of performing any occupational activity that did not require exposure to dust, chemicals, and fumes, as long as he could access his medications when required. (R. 25).

In a follow-up appointment with Dr. Hussain on January 18, 2002, the claimant reported that he was unemployed due to frequent absences caused by asthma and migraine headaches. (R. 19). However, the claimant admitted that he had not had an exacerbation of asthma since May 2001. (R. 19). On February 11, 2002, Dr. Hussain performed an ultrasound on the claimant's abdomen, which revealed a mildly echogenic liver consistent with hepatic steatosis. (R. 19). On February 25, 2002, Dr. Hussain noted that the claimant's blood pressure was significantly elevated. (R. 19). Dr. Hussain prescribed Midrin for the migraine headaches, but he advised the claimant to use the least amount possible. (R. 19). Dr. Hussain also continued the claimant's medication for blood pressure, with the addition of a diuretic. (R. 19).

On September 30, 2002, the claimant returned to the Veteran's Administration medical clinic and requested an evaluation for his work place, so he could pursue a career as a basketball coach. (R. 19). Dr. Hussain's treatment notes reflected that the claimant's medication controlled his hypertension, his anxiety improved on medication therapy, and his asthma was stable. (R. 19). However, Dr. Hussain informed the claimant that he could not complete the evaluation until

the claimant took a pulmonary function test. (R. 19). The claimant did not follow up with the pulmonary function test or return for treatment again until March 31, 2003. (R. 19). During the March 31, 2003, visit, the claimant reported that he continued to be somewhat anxious and had suffered a migraine headache the previous day. (R. 19). Dr. Hussain noted that the claimant had ongoing alcohol use and encouraged him to discontinue drinking alcohol. (R. 19). The claimant made a follow-up appointment for the pulmonary function test, but he did not return for that follow-up appointment. (R. 19).

The claimant returned to Walker Baptist Medical Center emergency room on April 2, 2003, for headache and left knee pain. (R. 19). The attending physician ordered an X-ray, which revealed a contusion and mild degenerative changes in the claimant's left knee. (R. 19). The claimant went to the Veteran's Administration medical clinic on April 16, 2003, for an increased asthma symptoms. (R.20). Dr. Hussain diagnosed the claimant with acute exacerbation of asthma, bronchospasm, and pneumonia. (R. 20). On April 22, 2003, the claimant returned to the Veteran's Administration medical clinic, and Dr. Hussain diagnosed him with upper respiratory infection and asthmatic bronchitis. (R. 20). The claimant returned to the Veteran's Administration medical clinic May 19, 2000, with complaints of knee pain. (R. 20). On May 28, 2003, the claimant reported to Dr. Hussain that his right knee pain had not improved. (R. 20). On examination, Dr. Hussain noted moderate effusion with mild tenderness in the claimant's right knee, and tenderness to palpation in the left knee. (R. 20). Dr. Hussain aspirated the claimant's right knee, treated it with injections, prescribed Tylenol number four for pain, and supplied the claimant with a knee brace. (R. 20). The claimant returned for a follow-up appointment on June 9, 2003, and Dr. Hussain diagnosed him with osteoarthritis of the knees.

(R. 20). Dr. Hussain performed an MRI study of the claimant's bilateral knees on August 6, 2003, which revealed moderate osteoarthritis and knee effusion in the right knee. (R. 20). Dr. Hussain noted that findings regarding the left knee were consistent with meniscopsular separation, posterior medially. (R. 20). Dr. Hussain also noted that all of the claimant's other health problems were stable at that time. (R. 20).

The claimant went to Walker Baptist Medical Center emergency room on January 12, 2004, and January 29, 2004, for migraine headache pain, and was treated with injections and released. (R.20). On April 22, 2004, the claimant presented to the emergency room for respiratory distress. (R. 21). The claimant returned to the emergency room on May 18, 2004, for asthma-related symptoms. (R.21). The claimant returned to the emergency room again on May 28, 2004, for headache and bilateral knee pain. (R. 21). The attending physician noted that the claimant's blood pressure was elevated, and advised the claimant to follow up with his treating physician. (R. 21). On August 21, 2004, the claimant returned to the emergency room with complaints of ongoing abdominal pain and right side pain. (R. 21). The attending physician performed an X-ray study, which did not reveal any abnormalities. (R. 21). The claimant returned to the emergency room on October 12, 2004, for chest pain, and the attending physician diagnosed him with chest wall pain. (R. 21).

The claimant visited Dr. Hussain again on December 14, 2004. (R. 21). Dr. Hussain's notes reflected that the claimant's blood pressure was significantly elevated, and that the claimant admitted that he had not been taking his blood pressure medication since it was prescribed in March 2004. (R. 21). Furthermore, Dr. Hussain noted that the claimant was not wearing his

knee brace, and had mild swelling in the right knee and worsening bilateral knee pain. (R. 21).

Dr. John Abroms, the consultative physician, examined the claimant on December 15, 2004. (R. 21). The claimant reported multiple medical problems, but stated that his primary problem was migraine headaches. (R. 21). The claimant reported that he was not taking any medications to prevent the headaches, but stated that he had a prescription for Midrin, which helped relieve the headache pain. (R. 21). The claimant also reported that he was unable to work due to arthritis of the bilateral knees and asthma, and that his knee pain was more disabling than his asthma. (R. 21). On the musculoskeletal examination, the claimant had full range of motion in all joints except for a mild limitation in the lumbar spine. (R. 21). The straight leg raise test was negative bilaterally and he could heel and toe walk, squat 75% of normal, and walk with a normal gait. (R. 21). Dr. Abroms further noted that the claimant's asthma was minimal, and no limitation related to the knees existed. (R. 22). Dr. Abroms further noted that the migraine headaches were capable of limiting the claimant when they occurred, but his symptoms were atypical of migraine headaches. (R.22). Dr. Abrom's based his opinion only on the subjective complaints of the claimant. (R. 21-22).

The claimant returned to the Veteran's Administration medical clinic on February 4, 2005, with complaints of increased migraine headaches. (R. 22). He reported that he was out of Midrin, because he was taking more of the medication than was prescribed. (R. 22). On February 15, 2005, Dr. Hussain educated the claimant on the importance of medication compliance, exercise, diet, and low sodium intake. (R. 22). Dr. Hussain's treatment notes reflect that on March 12, 2005, the claimant reported that Midrin no longer relieved his migraine headaches, so Dr. Hussain changed the claimant's medication to Topamax, and prescribed

Ultram and Motrin for pain. (R. 22). Dr. Hussain performed a CT study of the the claimant's head on March 14, 2005, which did not reveal any abnormalities. (R. 22). The claimant returned to Dr. Hussain on April 21, 2005, for aggravated asthma symptoms. (R. 22). Dr. Hussain performed a pulmonary function test, which revealed severe airway obstruction. (R. 22). However, Dr. Hussain found that the test results were outside the 95 percent confidence interval, which is indicative of poor patient effort. (R. 22).

The claimant presented to the emergency room at the Walker Baptist Medical Center on July 7, 2005, for sudden onset of shortness of breath and associated chest pain. (R. 22). The attending physician admitted the claimant to the hospital. (R. 22). Upon examination by the treating physician, the claimant was unable to name any of the medications prescribed to him. (R. 22). The attending physician treated the claimant with nebulizer treatments and X-ray studies, which did not reveal any chest abnormalities. (R. 23). The attending physician discharged the claimant on July 8, 2005, with instructions to follow up with Dr. Hussain at the Veteran's Administration medical clinic. (R. 23).

At the November 16, 2005 hearing, the ALJ determined that the claimant has severe impairments consisting of high blood pressure, migraine headaches, asthma, bilateral knee pain, and anxiety attacks. (R. 24). However, the ALJ found that these impairments, independently or in combination, were not severe enough to meet or equal the criteria of any of the listed impairments in Appendix 1 of the Regulations. (R. 24). The ALJ concluded:

> Athough the documentary evidence established underlying
> medical conditions capable of producing some pain and
> other limitations, substantial evidence as a whole does not
> support the severity of the alleged limitations arising from

> those conditions, nor does it support a conclusion that the
> objectively determined medical conditions have been of
> such severity that they could reasonably have given rise to
> disabling limitations as alleged by the claimant. (R. 29).

The ALJ found that no treating or examining physician presented a finding equivalent in severity to the criteria of any listed impairment. (R. 24). The ALJ also noted that the claimant's treating physician, Dr. Hussain, stated that the claimant was capable of performing any occupational activity that did not require exposure to dust, chemicals, and fumes, as long as he could access his medications when required. (R. 25).

At the hearing with the ALJ, Dr. Kinard, the vocational expert, considered the claimant's age, education, past work experience, and his residual functional capacity ("RFC"). (R. 30). Dr. Kinard opined that the claimant was unable to perform his past relevant work, but that the claimant would be able to perform jobs at the unskilled medium level such as dietary aide, cleaner/janitor, and linen room attendant. (R. 30). Dr. Kinard also found that the claimant would be able to perform jobs at the unskilled light level such as packager of small parts, storage facility clerk, and marker in the semi-conductor industry. (R. 30). Lastly, Dr. Kinard found that the claimant would be able to perform jobs at the unskilled sedentary level such as charge account clerk, surveillance system monitor, and bonder in the semi-conductor industry. (R. 30). According to Dr. Kinard, all of the jobs mentioned above are available in large numbers within the national economy. (R. 30).

The ALJ determined that, given his impairments, the claimant could not perform his past relevant work, but that he could perform medium work that allows a temperature controlled environment; no climbing; occasional stooping and squatting; no pushing and pulling operation

of the lower extremities; and no unprotected heights. (R. 31). The ALJ, therefore, denied Welch's claim for SSDI.

## VI. Discussion

### A. Application of the Three-Part Pain Standard and Consideration of the Medical Evidence of Record

The claimant argues that the ALJ improperly discredited claimant's subjective complaints of pain and ignored medical evidence in the record that would support claimant's subjective complaints of pain. The Commissioner asserts that the ALJ properly determined that the claimant's subjective complaints were not credible. The Commissioner also contends that the ALJ properly weighed the evidence and considered the medical record as a whole.[1]

A three-part pain standard applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms. The pain standard requires "(1) evidence of an underlying medical condition; and either (2) objective medical evidence confirming the severity of the alleged pain or (3) that the objectively determined medical condition can be reasonably expected to give rise to the claimed pain." *Wilson v. Barnhardt*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999); *Holt v. Sullivan*, 921 F.2d 1211, 1223 (11th Cir. 1991). "The ALJ does not have to recite the pain standard word for word; rather, the ALJ must make findings that indicate that the standard was applied." *Holt*, 921 F.2d at 1223. This "standard also applies to

---

[1] Because the claimant challenged only the ALJ's evaluation of his migraine headaches, the claimant's remaining impairments will not be addressed for the purposes of this memorandum. However, substantial evidence supports the ALJ's decision as a whole.

complaints of subjective conditions other than pain." *Id*. "Claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." *Id*. "Generally, credibility determinations with respect to the subjective testimony of a claimant are reserved to the ALJ." *Johns v. Bowen*, 821 F.2d 551, 557 (11th Cir. 1987). If the ALJ "decides not to credit such testimony, he must discredit it explicitly . . . and articulate explicit and adequate reasons for doing so . . . . Failure to articulate the reasons for discrediting subjective pain testimony requires, as a matter of law, that the testimony be accepted as true." *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1999). "The credibility determination does not need to cite 'particular phrases or formulations' but it cannot merely be a broad rejection which is 'not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210-1211 (11th Cir. 2005) (citing *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)). The ALJ may consider a claimant's daily activities in evaluating and discrediting complaints of disabling pain. *Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984).

The court finds that the ALJ properly applied the pain standard in this case. This court also finds that the ALJ provided explicit reasons based on substantial evidence in the record for discrediting the claimant's subjective pain testimony. The ALJ explicitly stated that he was applying the pain standard. Although the ALJ found that the claimant had the "severe" impairments of high blood pressure, migraine headaches, asthma, bilateral knee pain, and anxiety, he concluded that "the objective medical evidence fails to confirm disabling limitations arising from these impairments." The ALJ provided explicit reasons for this discounting the severity of the claimant's pain, and the court finds no error in the ALJ's determination.

In judging the claimant's credibility, the ALJ specifically noted that the evidence of record indicates that after February 2000, the claimant did not seek medical treatment for migraine headaches again until May 2001, when he presented to the Veterans Administration medical clinic. (R. 27). Dr. Hussain treated the claimant and prescribed Midrin for the migraine headaches. (R. 27). The claimant had no further complaints of headache pain until March 31, 2003. (R. 27). Dr. Hussain's treatment notes for the period of June 2003 through December 2003 indicate that the claimant's headaches were stable and did not require additional medication, besides Midrin, or any physical intervention. (R. 28). The claimant sought emergency room treatment for migraine headaches on two occasions in January 2004, but on both occasions the claimant had significantly elevated blood pressure due to his failure to properly use his prescribed blood pressure medication. (R. 28). After January 2004, the claimant had no further complaints of migraine headache pain until February 2005, when he complained to Dr. Hussain that Midrin was no longer relieving his symptoms. (R. 27). On March 12, 2005, Dr. Hussain changed the claimant's medications, and no record of further complaints of headache pain to any treating or examining physician exists after March 2005. (R. 27). The court finds that the ALJ properly concluded that the claimant's sporadic treatment history for migraine headaches belies his complaints of disabling migraine headache pain.

In making the evaluation of credibility, the ALJ also considered evidence from the claimant's treating sources, consultative evaluation reports, other examining sources, and claimant's testimony from the hearing. (R. 24-29). After reviewing the evidence of record, the ALJ properly concluded that the claimant did not comply with his prescribed medical treatment.

(R. 28). According to the evidence of record, each time the claimant complained of headache pain, his blood pressure was significantly elevated. (R. 27). The claimant's elevated blood pressure appears to have been primarily due to his non-compliance with medications. (R. 27). Dr. Hussain noted on several occasions that the claimant's blood pressure medications had expired and had not been refilled. (R. 23). Upon an emergency room examination in July of 2005, the claimant could not even name the medications that were prescribed to him, the majority of which were to be taken daily. (R. 29). The ALJ also noted that during the claimant's consultative physical examination with Dr. Abroms, the claimant admitted that Midron helped his headaches, and that migraine headaches were his worst problem. (R. 21). However, the claimant admitted that he had not been taking Midron because he had not gotten the prescription refilled. (R. 27). No evidence of record indicated that the claimant could not afford his medications; therefore, the ALJ properly concluded that the claimant was simply non-compliant with his prescribed medical treatment. (R. 28). Thus, the ALJ could not find the claimant disabled. 20 C.F.R. § 404.1530(b), [20 C.F.R. § 416.930(b)]; *see also Ellison*, 355 F.3d at 1275.

The ALJ also noted that refusal to follow prescribed medical treatment without a good reason will preclude a finding of disability. 20 C.F.R. § 404.1530(b), 20 C.F.R. § 416.930(b); *see also Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003). Furthermore, the ALJ noted that supplemental security income disability benefits may be denied if the Commissioner of Social Security determines that the claimant failed to follow prescribed course of treatment and ability to work would have been restored if the claimant had followed that treatment. *Lucas v. Sullivan*, 918 F.2d 1567, 1571 (11th Cir. 1990). This court finds that the ALJ properly considered evidence of the claimant's failure to take his prescribed medications in determining that the claimant's

pain from migraine headaches is not disabling.

The ALJ's rationale for rejecting the claimant's subjective complaints of disabling pain provides the court with the requisite level of specificity to withstand the claimant's allegations of error. Because the ALJ is the sole determiner of credibility, the court should not disturb a clearly-stated credibility finding unless substantial evidence does not support it. *Daniels v. Apfel*, 92 F. Supp. 2d 1269, 1280 (S.D. Ala. 2000) (*citing Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971)); *see also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). The court finds that the ALJ's decision regarding the claimant's credibility is clearly articulated and is supported by substantial evidence in the record; therefore, substantial evidence exists to support the ALJ's decision that the claimant's testimony of disabling pain is not credible.

The ALJ also noted that on August 17, 2001, Dr. Hussain specifically cleared the claimant "for participation in any occupational activity that does not require exposure to dust, chemicals, fumes, etc, as long as he has access to his medications when required." (R. 25). Dr. Hussain gave this opinion on the same month that the claimant filed for disability insurance benefits. (R. 25). Dr. Hussain gave this clearance at claimant's request for medical certification permitting him to work in a post office. (R. 25). The court finds that the ALJ properly concluded that the claimant's request to work in a post office on the same month that he claimed he had become disabled suggests that his condition was not as serious as he alleged. (R. 25)

The court finds that the ALJ properly discredited claimant's subjective complaints of pain and properly weighed the medical evidence of record in concluding that claimant's subjective complaints were unfounded. The court concludes, therefore, that substantial evidence in the record supports the ALJ's determination as to the claimant's subjective complaints of pain.

**B. Consideration of Evidence Acquired After the Hearing**

***The claimant argues that the ALJ erred in not fully and fairly developing the record,*** because the ALJ failed to consider evidence acquired after the hearing. The Commissioner contends that this court is not required to consider that evidence, because the claimant is only challenging the ALJ's decision denying benefits, not the Appeals Council's decision denying review. The Commissioner contends that this court is only required to consider whether the ALJ's decision to deny benefits was supported by substantial evidence in the record.

"Because a hearing before an ALJ in a Social Security matter is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 1988). As the Eleventh Circuit has noted,

> [a] full and fair record not only ensures that the ALJ has fulfilled his "duty . . . to scrupulously and conscientiously probe into, inquire of, and explores for all the relevant facts," but it also enables the reviewing court "to determine whether the ultimate decision on the merits is rational and supported by substantial evidence."

*Welch v. Bowen*, 854 F.2d 436, 440 (11th Cir. 1988). For a claimant to be entitled to a remand to the SSA for consideration of newly discovered evidence, a claimant must show: "(1) new, noncumulative evidence exists, (2) evidence is material such that reasonable possibility exists that the new evidence would change administrative result, and (3) good cause exists for applicant's failure to submit evidence at appropriate administrative level." *Vega v. Comm'r of Soc. Sec.*, 265 F.3d 1214, 1218 (11th Cir. 2001); *see also Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998), *cert. denied*, 525, U.S. 1124 (11th Cir. 1999); *Cherry v. Heckler*, 760 F.2d 1186, 1192 (11th Cir. 1985). However, "[w]hen the Appeals Council has denied review after

considering new evidence, and a claimant challenges the ALJ's decision by denying benefits, but not the Appeals Council's decision denying review, this court need not consider the new evidence submitted to the Appeals Council but rather, only the evidence actually presented to the ALJ." *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1266 (11th Cir. 2007).

When making his determination, the ALJ did not have the benefit of the additional evidence submitted to the Appeals Council on June 29, 1007. (R. 421-53). That evidence consists of a report from the Department of Veteran's Affairs dated August 19, 2006, from Mr. Bayse, Ed. S., Vocational Rehabilitation Counselor. (R. 452-53). The claimant contends that Mr. Bayse's report provides substantial evidence supporting the claimant's allegations of disabling limitations. (R. 421-53). In the report, Mr. Bayse stated that "the Vocational and Rehabilitation and Employment Service (VRE) has just determined that the claimant is no longer feasible to attain a vocational goal due to worsening of his service connected disabilities, that he is no longer employable and we doubt that this will ever change anytime in the future." Mr. Bayse further noted that the claimant's health had continually declined since 2001, and that although the VRE gave the claimant several opportunities to retake classes, Mr. Bayse eventually determined that the VA could not expect the claimant to achieve any type of employment goal.

Because the claimant is only challenging the ALJ's decision, this court is not required to consider evidence submitted to the Appeals Council in determining whether the ALJ's decision is supported by substantial evidence. *Ingram*, 496 F.3d at 1266 (*citing Falge*, 150 F.3d at 1233, *cert. denied*, 525 U.S. 1124 (1999); *see also Compton v. Astrue*, No. 8:07-cv-00489-EAJ at 7 (M.D. Fla. Feb. 7, 2008). The court does not have to consider the three requirements that a claimant must satisfy to be entitled to a remand to the SSA for consideration of newly discovered

evidence. This court is only required to consider "whether the ALJ's decision to deny benefits is supported by substantial evidence in the record before the ALJ <u>at the time of the decision</u>." *Id*. As this court has already determined, the ALJ's decision was supported by substantial evidence in the record.

Nevertheless, the court finds that the additional evidence - the report from the claimant's Vocational Rehabilitation Counselor - does not outweigh the medical evidence from the claimant's treating physicians. Nor does the counselor's report negate the claimant's sporadic treatment history, his failure to comply with his doctor's prescribed course of medication, or his treating physician's determination that the claimant could work in the post office the same month that the claimant asserts he became disabled. The court, therefore, finds that even if it were required to consider remand because of the new evidence, the court would still conclude that the remand is not appropriate.

### V. Conclusion

For the reasons stated above, the court concludes that the decision of the Commissioner is supported by substantial evidence and is due to be AFFIRMED. A separate order will be entered in accordance with this Memorandum Opinion.

DONE and ORDERED on this 2nd day of July, 2009.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE